UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALONZO P. BARELA,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>Defendant. | No. CV-14-03054-JTR<br><br>ORDER GRANTING PLAINTIFF'S MOTION  FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-Motions for Summary Judgment.  ECF Nos.  14, 16.  Attorney D. James Tree represents Plaintiff, and Special Assistant United States Attorney Leisa A. Wolf represents the Commissioner of Social Security (Defendant).  The parties have consented to proceed before a magistrate judge.  ECF No. 8.  After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

**JURISDICTION**

On February 10, 2010, Plaintiff filed a Title XVI application for supplemental security income.  Tr. 15; 144.  Plaintiff alleged an onset date of November 1, 2009.  Tr. 15; 144.  Plaintiff reported that he was unable to work due to meningitis, West Nile Virus, numbness in both hands, and migraine headaches.  Tr. 161.  The claims were denied initially and on reconsideration, and Plaintiff

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

1  requested an administrative hearing. Tr. 15; 82-111.

2  On July 11, 2012, Seattle Administrative Law Judge Larry Kennedy
3  presided over a hearing at which vocational expert Mark Harrington, and Plaintiff,
4  who was represented by counsel, testified. Tr. 34-77. On October 24, 2012, the
5  ALJ issued a decision finding Plaintiff not disabled. Tr. 15-28. The Appeals
6  Council declined review. Tr. 12-14. The instant matter is before this court
7  pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

9  The facts have been presented in the administrative hearing transcript, the
10  ALJ's decision, and the briefs of the parties and thus, they are only briefly
11  summarized here. At the time of the hearing, Plaintiff was a few days away from
12  turning 41 years old. Tr. 42. He had completed the eleventh grade. Tr. 42-43.
13  Plaintiff lived with his parents, who are both in poor health. Tr. 43-44. Plaintiff
14  has two children in their twenties, a thirteen year old and a five year old. Tr. 45-
15  46. Plaintiff said he tries to see his youngest child every other weekend. Tr. 46.

16  Plaintiff cleans the house, does the dishes, mops, vacuums, dusts, and does
17  yard work when he is feeling up to it. Tr. 47. He and his father trade off preparing
18  meals. Tr. 47.

19  Plaintiff's past jobs include working as a line cook at a restaurant, as a fast
20  food sandwich maker, and working in the kitchen of a retirement home. Tr. 49-50.

21  Plaintiff said he cannot work due to neck and back pain that he attributes to
22  bullet fragments that are lodged in his neck. Tr. 50-51. Several years earlier,
23  Plaintiff attempted to commit suicide with a handgun. Tr. 51-52; 54. Plaintiff
24  estimated he has attempted suicide thirteen times. Tr. 54. He explained that he
25  had difficulty finding mental health treatment due to his lack of money and health
26  insurance. Tr. 56.

27  On September 15, 2009, Plaintiff was admitted to the hospital with acute
28  meningitis and encephalitis. Tr. 334. Plaintiff testified that after that episode, his

neck pain has increased, and he experiences numbness and sometimes paralysis in his left hand and right leg. Tr. 52; 62-63.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); see *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie

case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since February 10, 2010, the alleged onset date. Tr. 17. At step two, the ALJ found Plaintiff suffered from the severe impairments of obesity, lumbar spine degenerative disc disorder, myalgia status post viral encephalus/meningitis, chronic cervicalgia, headaches, drug and alcohol addiction/use disorder, major depressive disorder, anxiety disorder, and borderline personality disorder. Tr. 17. At step three, the ALJ found Plaintiff's impairments, alone or in combination, do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d), 416.925 and 416.926). Tr. 18. At step four, the ALJ found Plaintiff is incapable of performing past relevant work. Tr. 27. The ALJ determined that considering Plaintiff's age, education, work experience and residual functional capacity, unskilled, sedentary jobs exist in significant numbers that Plaintiff can perform, such as table worker, gauger, and circuit board screener. Tr. 28. As a result, the ALJ concluded that Plaintiff has not been disabled within the meaning of the Social Security Act at any time from the date the application was filed through the date of the decision. Tr. 28.

**ISSUES**

Plaintiff contends that the ALJ erred in determining Plaintiff lacked credibility and in weighing the medical evidence. ECF No. 14 at 8-21.

**A.     Credibility**

Plaintiff argues that the ALJ erred by finding Plaintiff was not credible. Tr. 20-21. Plaintiff challenged several of the reasons the ALJ relied upon in finding Plaintiff lacked credibility.

The ALJ is responsible for determining credibility. *Andrews*, 53 F.3d at 1039. Unless affirmative evidence exists indicating that the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996). The ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan,* 903 F.2d 1229, 1231 (9th Cir. 1990). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998), quoting *Lester*, 81 F.3d at 834. If objective medical evidence exists of an underlying impairment, the ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991).

The ALJ relied upon several reasons in finding Plaintiff lacked credibility. Because the ALJ's credibility analysis is fatally flawed as explained below, remand is required for a new analysis.

First, the record does not support the ALJ's conclusion that Plaintiff provided inconsistent reporting about his mental state. For example, the ALJ found that Plaintiff provided inconsistent reporting related to mental impairments. Tr. 22.

The ALJ asserted that Plaintiff "denied any mental problems in October 2010," and cited two SSA forms – a Function Report and a Disability Report

Appeal – completed by Plaintiff. Tr. 22. However, both reports are consistent with Plaintiff's alleged limitations. In the Function Report, completed October 20, 2010, Plaintiff indicated he had trouble with his memory, he has problems paying attention, he is easily distracted, and he has trouble following instructions. Tr. 173. The Disability Report Appeal form, completed March 3, 2011, indicates Plaintiff's condition was "gradually worsening," his stress had increased, he was unable to sleep well and was paranoid and scared to leave his house, he was emotionally unstable and suffered from depression. Tr. 198-99. Both reports are consistent with Plaintiff's reports of mental limitations. Contrary to the ALJ's conclusions, these characterizations all implicate problems with mental functioning, and do not provide evidence of inconsistent reporting. The ALJ's conclusion is not supported by the record.[1]

Next, the ALJ found that although Plaintiff described himself as bedridden due to pain and other symptoms, this was inconsistent with his testimony that he cared for his ill father and his mother, who needed substantial help. Tr. 22. The record does not support the ALJ's conclusion. Plaintiff testified that he lived with his parents, who were both in poor health. Tr. 44-45. Specifically, he testified that his mother suffered from rheumatoid arthritis, and he tried "to help her with somewhat of that." Tr. 44. Plaintiff said that his mother was "pretty much

---

[1] Moreover, the ALJ fails to acknowledge that symptoms related to mental impairment can wax and wane, and often deteriorate over time. The evaluation of a mental impairment is often more complicated than the evaluation of a claimed physical impairment. *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996). Evidence of symptom-free periods, which may negate the finding of a physical disability, does not compel a finding that disability based on a mental disorder has ceased. *Id*. Mental illness can be extremely difficult to predict, and remissions are of "uncertain duration and marked by the impending possibility of relapse." *Id*.

bedridden," and she had an electric chair that moved her up and down the stairs. Tr. 44. When the ALJ asked Plaintiff if he was "doing a lot of the help around this house for them," Plaintiff responded that he helped "the days that I can because there are days where I am pretty much bed ridden [sic] and I can't get out of bed myself." Tr. 45. Plaintiff also noted that his mother had a caregiver, but the caregiver did not show up consistently. Tr. 45.

Plaintiff's testimony explicitly indicated that he cared for his parents when he was physically able to help, but he did not feel well enough every day to provide assistance. The ALJ's characterization that Plaintiff's reported limitations were inconsistent with his assistance to his parents is not supported by the record.

Also, the ALJ found that "the fact [Plaintiff] believed he could take primary custody in caring for a very young child runs contrary to the allegations about the severity of his overall impairment." Tr. 22. The record contains scant reference to Plaintiff's attempts related to custody of his young child. When the ALJ asked Plaintiff if he saw his youngest child, Plaintiff responded, "I don't know – I see my youngest but I was supposed to be granted custody and some – I don't know what happened." Tr. 46. From this exchange, it is unclear if Plaintiff sought full custody, or simply an increase in the time he spent with his child.

Moreover, as Plaintiff points out, when analyzing mental disorders, an ALJ "must take into account evidence indicating that the claimant's true functional ability may be substantially less than the claimant asserts or wishes." *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001) (quoting *Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir. 1984)). As such, Plaintiff's beliefs about his abilities are not indicative of his actual ability to function, and the ALJ is directed to consider this factor when determining residual functional capacity. The ALJ's characterization of Plaintiff's desire to increase his custodial time with his child as inconsistent with the severity of his alleged impairments is not supported by the record.

Also in determining Plaintiff had little credibility, the ALJ found that "the objective evidence is disproportionate to the claimant's allegation that his impairments prevent him from working in any type of job." Tr. 23. The ALJ cited Plaintiff's "lower back radiological image showed a small protrusion and mild bulging," and his head CT scan was negative. Tr. 23. Plaintiff contends that his severe obesity impairment added stress and pain to what might otherwise appear to be a mild impairment. ECF No. 14 at 12-13.

As Plaintiff points out, "the combined effects of obesity with other impairments may be greater than might be expected without obesity." SSR 02-01p. In this case, when determining that the objective evidence did not support the severity of symptoms alleged by Plaintiff, it is not obvious to the Court that the ALJ considered whether Plaintiff's obesity contributed to the severity of his complaints, and he should do so on remand.

Next, the ALJ discounted Plaintiff's pain related to the bullet fragments embedded in his neck and back on the basis that in September 2009, Plaintiff did not report his condition worsened when he was admitted into the hospital, and the record lacked objective evidence of worsening or "a traumatic incident that would explain such worsening." Tr. 23.

On September 15, 2009, Plaintiff was admitted to the hospital with acute meningitis and encephalitis. Tr. 334. The admission chart note indicates that Plaintiff denied "neck pain." Tr. 324. The chart note also indicated Plaintiff was in an "altered mental state" and had a high fever. Tr. 324. Plaintiff's brief response, in an altered mental state, is not sufficient evidence to establish Plaintiff's neck pain resolved. Moreover, on March 18, 2010, Plaintiff reported to Venugopal Bellum, M.D., that the pain in his neck and back had been aggravated since his bout of encephalitis. Tr. 439.

An "ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." *McBrayer v. Secretary of Health and Human Servs.,* 712 F.2d

...

795, 799 (2d Cir. 1983).  In this case, the ALJ should obtain testimony from an independent medical expert, that should include an opinion regarding whether the record contains reliable evidence of deterioration in Plaintiff's condition, and whether severe meningitis and encephalitis precipitated, accelerated, or was related to a deterioration in Plaintiff's condition.

Next, the ALJ found Plaintiff was not credible because his ill parents needed him to care for them at home, and thus he "lives in a situation where he may not have the opportunity to work because of his ailing parents." Tr. 23.  This reason is not clear and convincing, nor is it supported by the record.  While Plaintiff may have informed his parents' medical providers that he is the primary caregiver, he could have done so for a number of reasons and his assertion does not establish that Plaintiff is unable to leave his parents to work full-time.  Significantly, the ALJ ignored Plaintiff's testimony that his mother had an assigned caregiver, but that caregiver was unreliable and Plaintiff was attempting to remedy the situation. Tr. 45.  As such, the ALJ's reliance upon Plaintiff's parents' health was not a valid reason to discount his credibility.

Finally, the ALJ cited Plaintiff's minimal earnings and spotty work history as evidence he has no desire to work. Tr. 23.  A plaintiff's "spotty" work history, with years of unemployment between jobs, is a valid credibility consideration and can indicate an unwillingness to work. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).  Plaintiff alleges that the ALJ ignored Plaintiff's barriers to employment, including his on-going struggle with mental health and substance abuse.  ECF No. 14 at 15.  In this determination, the ALJ did not address how Plaintiff's mental health issues and substance abuse, or the totality of the circumstances, affected his work history.  On remand, the ALJ should include these factors in the credibility analysis.

Because the ALJ's credibility analysis contains several errors, remand for a new credibility analysis is necessary.

**B.    Venugopal Bellum, M.D.**

Plaintiff argues that the ALJ erred in weighing the opinion of Plaintiff's treating physician Venugopal Bellum, M.D.  ECF No. 14 at 18-20.  Specifically, Plaintiff argues that the ALJ's reasons for giving little weight to Dr. Bellum's opinion are not supported by the record.

Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians.  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Sprague,* 812 F.2d at 1230.  An ALJ may not reject a treating physician's opinion without providing findings that set forth "specific, legitimate reasons" based upon "substantial evidence in the record." *Smolen,* 80 F.3d at 1285; *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  If the treating physician opinion is uncontroverted, the ALJ's reasons for rejecting the opinion must be "clear and convincing."  *Smolen*, 80 F.3d at 1285.

On October 27, 2009, Dr. Bellum completed a Physical Evaluation check-box form.  Tr. 643-46.  Dr. Bellum listed Plaintiff's diagnoses as headaches and myalgia, and he opined that both conditions caused mild to moderate limitations of work activities.  Tr. 645.  Dr. Bellum concluded Plaintiff's overall work level was limited to light work.  Tr. 645.

On March 18, 2010, Dr. Bellum completed a Physical Evaluation check-box form.  Tr. 662-65.  Dr. Bellum listed Plaintiff's diagnoses as chronic cervicalgia and neuropathy, and he opined that cervicalgia caused marked to severe limitations of work activities.  Tr. 664.  Dr. Bellum concluded Plaintiff's overall work level was "severely limited."  Tr. 664.

On June 8, 2010, Dr. Bellum completed a Physical Evaluation check-box form.[2]  Tr. 470-72.  In this form, Dr. Bellum indicated Plaintiff's diagnoses were

---

[2]The form appears to be missing the first page.

chronic cervicalgia and chronic low back pain, and he opined the cervicalgia caused marked limitations of work activities. Tr. 471. Dr. Bellum concluded Plaintiff's overall work level was "severely limited." Tr. 471.

Dr. Bellum completed two check-box forms from DSHS related to Plaintiff's application for general assistance. Tr. 466-69. In the form completed May 4, 2010, Dr. Bellum opined Plaintiff's work function was impaired, his condition was stable and in a work day he could (1) stand two-to-three hours; (2) sit two-to-three hours; (3) lift 10 pounds occasionally; and (4) lift five-to-seven pounds frequently. Tr. 468. In the form completed on November 11, 2010, Dr. Bellum opined Plaintiff's work function was impaired, his condition was deteriorating, and in a work day he could (1) stand two hours; (2) sit two hours; (3) lift 10 pounds occasionally; and (4) lift five pounds frequently. Tr. 468.

The ALJ gave Dr. Bellum's opinions little weight because "he gave widely fluctuating limitations without clear explanations for oscillations between light [work] and severely limited. The non-linear pattern is not consistent with general worsening over time, as the claimant contends." Tr. 25. Also, the ALJ found that Dr. Bellum's opinions were inconsistent with the weight Plaintiff reported he could lift, and with the activities Plaintiff acknowledged to the doctor including moving furniture, climbing stairs and acting as primary caregiver for parents. Tr. 26. Finally, the ALJ found that Dr. Bellum's assessments were internally inconsistent with his treatment notes. Tr. 26.

First, Plaintiff argues that the record does not support ALJ's characterization of Dr. Bellum's assessments as "widely fluctuating" and as "non-linear" and, thus, inconsistent with Plaintiff's allegation his condition was deteriorating. ECF No. 14 at 18-19. An ALJ may discredit physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings. *Batson*, 359 F.3d at 1195. In this case, the ALJ's observation that the check-box forms provided no explanation about Plaintiff's worsening symptoms is supported

by the record. The forms require minimal information and Dr. Bellum provided scant notations about Plaintiff's condition. However, the record does not support the ALJ's characterization that Dr. Bellum's opinions widely fluctuated and contradicted a deterioration of Plaintiff's condition. Instead, the sequence of the Physical Evaluations reveal a steady decline in Plaintiff's condition, most obviously by the increase in the severity of the limitations caused by his condition, and by the decline in Plaintiff's assessed overall work level.

Second, Plaintiff argues that the record does not support the ALJ's findings that Plaintiff's activities contradicted Dr. Bellum's assessment of Plaintiff's abilities. ECF No. 14 at 19. A physician's opinion may be discounted where it is inconsistent with a claimant's level of functioning. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Plaintiff explains that Dr. Bellum's assessment was related to Plaintiff's ability to sustain full-time employment, and his ability to help his mother sporadically does not equate with the ability to work in a competitive work environment. ECF No. 14 at 19.

The ALJ relied in part upon Plaintiff's function report, dated October 20, 2010, in which Plaintiff asserted he could lift up to 15 pounds, and "it hurts if it's heavy." Tr. 26; 173. Plaintiff does not elaborate on how long, or how often he is able to lift 15 pounds. Also, Plaintiff indicated that bending too much hurts his lower back; standing too long hurts his neck and lower back; and kneeling hurts his neck. Tr. 173. He said he can walk five to 15 minutes, and then must rest for between 15 to 30 minutes before he can walk again. Tr. 173. It is not apparent that these assertions by Plaintiff contradict Dr. Bellum's assessment of his ability to work a full time job.

Additionally, the ALJ concluded that Dr. Bellum's treatment note from June, 2010, contradicted his assessment of Plaintiff's abilities, stating that nothing in the treatment note "described a person who had a complete inability to walk." Tr. 26. In that treatment note, Dr. Bellum notes that Plaintiff reported his chronic low back

pain had been aggravated for several weeks. Tr. 436. The Physical Evaluation form completed in June 2010, by Dr. Bellum concluded Plaintiff's overall work level was "severely limited," which is defined on the form as "unable to lift at least two pounds or unable to stand and/or walk." Tr. 471. The ALJ's conclusion that an assessment of Plaintiff's overall work ability as "severely limited," equates with a "complete inability to walk" is not supported in law or fact. While the check-box form is abbreviated, the purpose is to provide an assessment of Plaintiff's ability to sustain full time work. It is less than clear that a "severely limited" rating means the patient is entirely unable to stand or walk for any amount of time, as interpreted by the ALJ in this opinion.

The ALJ's reasons for discounting Dr. Bellum's opinion were not specific, legitimate and based upon substantial evidence in the record. On remand, the ALJ will reconsider Dr. Bellum's opinions and provide a new analysis.

C.    **Mental Limitations**

Plaintiff contends that the ALJ erred by failing to include in the RFC, mental health limitations assessed by three doctors, including Aaron R. Burdge, Ph.D., Phillip Rodenberger, M.D., and Christopher J. Clark, M.Ed. ECF No. 14 at 20. Plaintiff's argument is abbreviated and fails to identify with specificity the limitations he alleges were improperly omitted from his RFC. Instead, Plaintiff's entire argument on this issue is limited to the assertion that the opinions from the three medical providers "all support a finding of disabled based on mental health concerns" and "the ALJ failed to include many limitations as set forth, supra, relating to [Plaintiff's] mental health problems in the RFC." ECF No. 14 at 20-21. Plaintiff cites to three exhibits, one of which is 180 pages long, but fails to identify particular findings within those exhibits. The court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). The Ninth Circuit has repeatedly admonished that the court

will not "manufacture arguments for an appellant" and, therefore, will not consider claims that were not actually argued in appellant's opening brief. *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994). Because Plaintiff failed to provide adequate briefing, the court is unable to consider this issue.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the court concludes the ALJ's decision is based on legal error, and requires remand. On remand, the ALJ is directed to perform a new analysis related to Plaintiff's credibility and a new analysis related to Dr. Bellum's opinion. The decision is therefore REVERSED and the case is REMANDED for further proceedings consistent with this opinion. Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14,** is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 16,** is **DENIED**.

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff, and the file shall be CLOSED.

DATED January 13, 2015.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE